**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| EVON WILLIAMS, | ) | CASE NO. 1:11-cv-2569 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | VECCHIARELLI |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| Defendant. | ) | **ORDER** |

Plaintiff, Evon Williams ("Plaintiff"), challenges the final decision of Defendant, Michael J. Astrue, Commissioner of Social Security ("the Commissioner"), denying her applications for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* ("the Act"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2). For the reasons set forth below, the Commissioner's final decision is AFFIRMED.

## I. PROCEDURAL HISTORY

On June 30, 2008, Plaintiff filed applications for a POD, DIB, and SSI and alleged a disability onset date of January 22, 2008. (Tr. 11.) The applications were denied initially and upon reconsideration, so Plaintiff requested a hearing before an administrative law judge ("ALJ"). (Tr. 11.) On February 3, 2010, an ALJ held Plaintiff's hearing by video conference. (Tr. 11.) Plaintiff participated and testified. (Tr. 11.) Plaintiff was informed of her right to counsel, but Plaintiff declined representation; and the ALJ determined that Plaintiff was capable of making that choice. (Tr. 11.) On March 5, 2010, the ALJ found Plaintiff not disabled. (Tr. 18.) On September 23, 2011, the Appeals Council declined to review the ALJ's decision, so the ALJ's decision became the Commissioner's final decision. (Tr. 1.)

On November 25, 2011, Plaintiff filed her complaint to challenge the Commissioner's final decision. (Doc. No. 1.) On May 24, 2012, Plaintiff filed her Brief on the Merits. (Doc. No. 14.) On July 5, 2012, the Commissioner filed his Brief on the Merits. (Doc. No. 15.) Plaintiff did not file a reply brief.

Plaintiff asserts three assignments of error: (1) the ALJ failed to articulate in a sufficiently clear manner the weight she gave to the opinions of examining physician Sushil M. Sethi, M.D.; (2) the ALJ failed to account for Dr. Sethi's opinion that Plaintiff was moderately limited in her abilities to sit, stand, walk, lift, carry, and handle objects; and (3) the ALJ failed to fully and fairly develop the record by requesting updated medical records, ordering a consultative examination, or calling upon a medical expert at Plaintiff's hearing.

## II. EVIDENCE

### A. Personal and Vocational Evidence

Plaintiff was 46 years old on her alleged disability onset date (Tr. 16) and 48 years old on the date of her hearing before the ALJ (Tr. 30). She had at least a high school education and was able to communicate in English. (Tr. 16.) She had past relevant work experience as a meat packer, inspector, press operator, order picker, machine operator, home health aide, hospital worker, and group home worker. (Tr. 16.)

### B. Medical Evidence

On August 26, 2007, Plaintiff presented to Dr. Vijeth Sringeri, M.D., with a chief complaint of "intractable right knee pain." (Tr. 203.) Dr. Sringeri indicated the following. An x-ray of Plaintiff's knee revealed moderate degenerative arthritis. (Tr. 203.) Plaintiff was given a Kenalog injection, but Plaintiff's pain did not improve so Plaintiff was "admitted" for further evaluation and management. (Tr. 203.)

On August 28, 2008, Plaintiff underwent a consultative examination with Dr. Michael Viau, M.D., regarding Plaintiff's right knee pain. (Tr. 206.) Dr. Viau indicated that Plaintiff reported she had twisted her knee approximately ten years prior and that her knee had not bothered her until approximately two weeks prior. (Tr. 206.) Dr. Viau further indicated that an MRI revealed "a probable medial meniscal tear," and he advised an arthoscopic procedure. (Tr. 206.)

On September 24, 2007, Plaintiff underwent a partial medial meniscectomy with chondroplasty with Dr. Viau. (Tr. 208.) Dr. Viau reported that Plaintiff tolerated the procedure well and left the recovery room in satisfactory condition. (Tr. 209.)

On March 29, 2008, Plaintiff presented to the hospital emergency department and complained of "a shooting-type" pain in her left leg that was triggered with weight-bearing. (Tr. 229.) Dr. Fred Ginsburg, M.D., attended to Plaintiff and indicated that Plaintiff reported she "has been using a walker to help get around." (Tr. 229.) Dr. Ginsburg further indicated that Plaintiff's pain "seems to be more muscle based" and discharged Plaintiff with Vicodin. (Tr. 230.)

On April 2, 2008, Plaintiff returned to Dr. Viau and complained of severe bilateral knee pain. (Tr. 290.) Dr. Viau indicated that an x-ray revealed "early medial compartment narrowing bilat[erally]," and he recommended that Plaintiff obtain Cortisone injections in both knees. (Tr. 290.)

Also on April 2, 2008, Dr. Viau completed a medical source statement in which he did not specify any limitations, but indicated that Plaintiff had been released to return to work in October 2007 and had not presented to him since April 2008. (Tr. 224-25.)

On September 22, 2008, Plaintiff presented to Dr. Sushil M. Sethi, M.D., for a consultative examination upon referral from the Bureau of Disability Determination. (Tr. 295.) Dr. Sethi indicated the following upon physical examination. Plaintiff presented with a cane, and Plaintiff reported that the cane gave her stability. (Tr. 296.) However, Plaintiff was able to walk short distances in Dr. Sethi's office without the cane. (Tr. 296.) Dr. Sethi concluded that "the use of the cane is not obligatory." (Tr. 296.) Plaintiff was not able to walk on tiptoes and heels, but she was able to squat halfway. (Tr. 296.) Plaintiff exhibited no muscle spasms, guarding, or atrophy. (Tr. 296.) Her motor strength was 5 on a scale to 5, although Plaintiff exhibited medial tenderness mostly on the right knee. (Tr. 296.) After reviewing x-rays of Plaintiff's right knee, Dr.

Sethi was of the impression that Plaintiff had moderate osteoarthritis of the right knee. (Tr. 297.) Dr. Sethi concluded that Plaintiff was moderately limited in her abilities to sit, stand, walk, lift, carry, and handle objects. (Tr. 297.)

On October 8, 2008, state agency reviewing physician William Bolz, M.D., reviewed the record evidence, including Dr. Sethi's consultative examination, and assessed Plaintiff's physical residual functional capacity ("RFC") as follows. (*See* Tr. 306-13.) Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently; and sit, stand, and walk for about 6 hours in an 8-hour workday with normal breaks. (Tr. 307.) She was not limited in her abilities to push and pull except to the extent she was limited in her abilities to lift and carry. (Tr. 307.) She could frequently climb ramps and stairs; but she could only occasionally climb ladders, ropes, and scaffolds, kneel, crouch, and crawl. (Tr. 308.) She had no manipulative, visual, communicative, or environmental limitations. (Tr. 309-10.)

Dr. Bolz found Plaintiff credible regarding the nature of her impairments but not credible regarding the severity of her impairments, in part because: no doctor indicated Plaintiff would require a bilateral knee replacement at any time in the near future; Plaintiff had not presented to her doctor for pain management since April 2008; and Plaintiff reported she had been working 24 hours a week. (Tr. 311.) Dr. Bolz further noted that Plaintiff was presently working as a home health aide, which usually was performed at a medium exertion level and, therefore, supported the conclusion she could perform light work. (Tr. 311.)

On October 10, 2008, Plaintiff presented to Dr. Viau, and Dr. Viau indicated the following. (Tr. 331.) Plaintiff still suffered severe bilateral knee pain, and her right knee

5

was worse than her left knee. (Tr. 331.) An x-ray revealed evidence of degenerative joint disease, but there remained "some preservation of joint space." (Tr. 331.) Plaintiff's "[p]revious Cortisone injections were of minimal help," and Plaintiff presently used over-the-counter Aleve. (Tr. 331.) Dr. Viau provided Plaintiff with samples of Celebrex and suggested that Plaintiff try Hyalgan injections. (Tr. 331.)

Between December 8, 2008, and January 5, 2009, Plaintiff obtained bilateral Hyalgan injections from Dr. Viau. (Tr. 331.)

On January 1, 2009, state agency reviewing physician Leslie Green, M.D., affirmed Dr. Bolz's findings. (Tr. 330.)

### C. Hearing Testimony

#### 1. Plaintiff's Hearing Testimony

Plaintiff testified at her hearing as follows. Plaintiff stopped working in 2007 because she underwent surgery on her right knee. (Tr. 34.) Her doctor thereafter instructed her to try to return to work. (Tr. 35.) She was not able to continue working as a glass inspector in a factory, so she began working in a "group home environment." (Tr. 35.) She worked full-time between May 2008 and November 2009. (Tr. 35.) She stopped working in the group home in November 2009 because she could no longer lift her legs, walk, and traverse stairs. (Tr. 35-36.)

Plaintiff could not work because her knees hurt "constantly"; she had difficulty balancing and could not walk long distances because her knees swelled; she suffered pain if she sat or stood "too long"; and her physical therapy was "not going well." (*See* Tr. 43.) She used a cane since 2007. (Tr. 43.) She asked her doctors about receiving

a knee replacement, but her doctors informed her that she was too young to undergo the procedure. (*See* Tr. 43.) She took Tramadol and Ibuprofen for her pain; and she had taken Percocet and Vicodin. (Tr. 45.) If she did not take medication, her pain would rate at 10 on a scale to 10 in severity; and when she took her medication her pain rated at 5 on a scale to 10. (Tr. 45-46.) She did not suffer side effects from any medication she presently used. (Tr. 46.)

Plaintiff sometimes cooked for herself and washed her own clothes. (Tr. 46.) She was able to bathe, groom, and dress herself. (Tr. 46.) She usually sat in her house during the day; she did not want to move because her knees hurt. (Tr. 47.) On the occasions she left her house, she visited her sister, who lived approximately one mile away. (Tr. 47.) Plaintiff had a driver's license, and she drove as needed (although not every day). (Tr. 32-33.)

Plaintiff also felt depressed, although she was not receiving any treatment for depression. (Tr. 44.) She planned to visit an orthopedic surgeon, as well as her primary care physician to discuss her depression, the following week. (Tr. 44.)

### 2. Vocational Expert's Hearing Testimony

The ALJ posed the following hypothetical to the VE:

> I ask you to assume a hypothetical individual the claimant's age, education, and work experience, that individual would be limited to . . . light work; [the] individual should not engage in activities requiring the operation of foot or leg control[s]; [the] individual should not work at heights or us[e] ladders, ropes or scaffolds; [the] individual should not engage in activities requiring more than occasional, occasional being defined as up to one-third of the time[,] use of ramps, stairs, stooping, crouching, crawling, and kneeling; work should be outside environments having more than incidental exposure to extremes of cold or vibration or any . . . right overhead lifting or reaching.

7

(Tr. 50-51.) The VE testified that such an individual could perform Plaintiff's past relevant work as a glass inspector; and that the individual could perform Plaintiff's past relevant work as a meat packer as described in the Dictionary of Occupational Titles ("DOT") but not as Plaintiff had performed the work. (Tr. 51.)

The ALJ asked whether the hypothetical individual could perform Plaintiff's past relevant work if she additionally required a sit/stand option. (Tr. 51.) The VE testified that such an individual could not perform Plaintiff's past relevant work, but could perform other work as a companion (for which there were 231,000 jobs in the nation and 1,200 jobs in Ohio), human services worker (for which there were 270,000 jobs in the nation and 4,500 jobs in Ohio), and guard (for which there were 42,000 jobs in the nation and 850 jobs in Ohio). (Tr. 52.) The VE clarified that "the work portion numbers for guards would decrease by one half to account for both the sit/stand option and the environmental exposure." (Tr. 52.)

Finally, the ALJ asked the VE whether the hypothetical person could still perform other work if, additionally, she were off task 25 percent of the time because of chronic pain. (Tr. 52.) The VE responded that no jobs would be available to such a person. (Tr. 52.) The VE concluded that her testimony was consistent with the DOT and her professional experience. (Tr. 52.)

### III. STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). A claimant is considered

disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a).

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) *and* 416.920(b). Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) *and* 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) *and* 416.920(d). Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) *and* 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

9

### IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.

2. The claimant has not engaged in substantial gainful activity since January 22, 2008, the alleged onset date.

3. The claimant has the following severe impairments: knee arthritis, status post right knee meniscectomy.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. . . . Specific consideration has been given to Section 1.00 of the Listing of Impairments.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work. . . .  The claimant must avoid operation of foot/leg controls. She must avoid heights, ladders, ropes, scaffolds.  The claimant is limited to occasional climbing of ramps/stairs, stooping, kneeling, crouching, and crawling.  She must avoid exposure to extreme cold and vibration.  She must avoid overhead lifting and reaching on the right.  She requires an ability to sit/stand at-will.

6. The claimant is unable to perform any past relevant work.

. . . . .

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 22, 2008, through the date of this decision.

10

(Tr. 13-17.)

## V. LAW & ANALYSIS

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

### B. The ALJ's Assessment of Dr. Sethi's Opinions

11

Plaintiff contends that the ALJ failed to articulate in a sufficiently clear manner the weight she gave to the opinions of Dr. Sethi, and that this failure deprives the Court of the ability to conduct any meaningful review of the Commissioner's final decision. Plaintiff further contends that, although it appears the ALJ gave weight to Dr. Sethi's findings, the ALJ failed to determine limitations based on Dr. Sethi's opinion that Plaintiff was moderately limited in her abilities to sit, stand, walk, lift, carry, and handle objects.  For the following reasons, these contentions are not well taken.

Dr. Sethi was not a treating physician, but rather a one-time consultative examiner; accordingly, his opinion was not entitled to the deference afforded an treating physician.  Additionally, an ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party; and an ALJ need not make explicit credibility findings as to each bit of conflicting testimony so long as his factual findings as a whole show that he implicitly resolved such conflicts. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) (per curiam) (quoting *Loral Def. Sys.-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir.1999)).  Here, the ALJ noted Dr. Sethi's observation that Plaintiff was able to walk short distances in his office, as well as Dr. Sethi's opinion that Plaintiff did not require a cane to ambulate. (Tr. 15.)  Further, she gave weight to Dr. Bolz's opinions, which were based in part of Dr. Sethi's consultative examination.  (Tr. 15.)  Finally, the ALJ found that Plaintiff could not operate foot/leg controls; had to avoid heights, ladders, ropes, and scaffolds; could only occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; could not perform overhead lifting and reaching on the right; and required an at-will sit/stand option.  The ALJ's factual findings are supported by the record, and the record as a

whole shows that the ALJ implicitly addressed and gave weight to Dr. Sethi's opinions. The ALJ's RFC determination adequately accounts for Plaintiff's limitations in sitting, standing, walking, lifting, carrying, and handling objects—even as proposed by Dr. Sethi—and Plaintiff provides no basis to conclude otherwise.[1] Accordingly, Plaintiff's contentions that the ALJ did not adequately address and account for Dr. Sethi's opinions are not well taken.

### C. Whether the ALJ Adequately Developed the Record

Plaintiff contends that the ALJ failed to fully and fairly develop the record because she failed to request updated medical records, order a consultative examination, or call upon a medical expert at Plaintiff's hearing. For the following reasons, this contention also is not well taken.

The most recent medical opinion of Plaintiff's functional abilities is Dr. Green's January 1, 2009, affirmation of Dr. Bolz's findings. Approximately one year and two months elapsed between Dr. Green's consultative opinion and the date the ALJ rendered her decision. Plaintiff cites *Deskin v. Commissioner of Social Security*, 605 F. Supp. 2d 908 (N.D. Ohio 2008), for the proposition that substantial evidence does not support the ALJ's RFC determination simply because the record does not contain, and the ALJ did not rely on, a more recent medical opinion of Plaintiff's functional abilities.[2]

---

[1] RFC is for the ALJ to determine, *see* 20 C.F.R. § 416.945(a), and Plaintiff has presented no persuasive argument that the RFC is inconsistent with Dr. Sethi's opinion.

[2] The court in *Deskin* stated that "where the transcript contains only diagnostic evidence and no opinion from a medical source about functional limitations (or only an outdated nonexamining agency opinion), to fulfill the responsibility to develop a complete record, the ALJ must recontact the treating source, order a

13

But RFC is for the ALJ to determine, *see* 20 C.F.R. § 416.945(a); and *Deskin* "is not representative of the law established by the legislature, and [as] interpreted by the Sixth Circuit Court of Appeals." *Henderson v. Comm'r of Soc. Sec.*, No. 1:08-cv-2080, 2010 WL 750222, at *2 (N.D. Ohio Mar. 2, 2010) (Nugent, J.).

Although the ALJ has a duty to ensure that a reasonable record has been developed, *see Johnson v. Sec'y of Health & Human Servs.*, 794 F.2d 1106, 1111 (6th Cir. 1986), it is incumbent upon the claimant to provide an adequate record upon which the ALJ can make an informed decision regarding the claimant's disability status, *see Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986). Nevertheless, an ALJ's basic obligation to develop a full and fair record rises to a special duty when an unrepresented claimant unfamiliar with hearing procedures appears before her. *See Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051 (6th Cir. 1983). Whether the ALJ satisfies this heightened duty of care is determined on a case-by-case basis, *see id.*, and "the key inquiry is whether the [ALJ] fully and fairly developed the record through a conscientious probing of all relevant facts," *Rowden v. Chater*, 87 F.3d 1315 (Table), 1996 WL 294464, at *1 (6th Cir. June 3, 1996).

Here, the ALJ conscientiously probed all the relevant facts. The ALJ asked Plaintiff whether she wanted to proceed without an attorney. (Tr. 26-28.) She further inquired into Plaintiff's general personal information (Tr. 30-32); work history (Tr. 33-42); pain and depression (Tr. 44-45); medication and side effects (Tr. 45-46); and daily

---

consultative examination, or have a medical expert testify at the hearing." *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008).

activities (Tr. 46-47). The ALJ also repeatedly inquired if Plaintiff had other conditions or information to which she wanted to bring attention; and the ALJ told Plaintiff that she may feel free to provide additional information at any time during the hearing. (Tr. 45, 47, 53.) Finally, at the end of the hearing, the ALJ afforded Plaintiff an opportunity to ask questions to the VE and provide any additional testimony. (Tr. 53.)

An ALJ is not required to refer a claimant for a consultative examination unless the record establishes that such an examination "is *necessary* to enable the administrative law judge to make the disability decision." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) (quoting *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977)). Further, it is within the ALJ's discretion whether to consult an ME at a claimant's hearing. *See* 20 C.F.R. § 404.1529(b). Plaintiff contends only that her testimony that she planned to see an orthopedic surgeon, as well as her primary care physician regarding her alleged depression, put the ALJ on notice that the record was incomplete. But the mere fact that Plaintiff planned to visit doctors in the near future is insufficient to support the conclusion that any such additional evidence was necessary for the ALJ to render her decision.[3]

It is well settled that the party seeking remand bears the burden of showing that a remand is proper. *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th

---

[3] Plaintiff never presented objective medical evidence to establish that she suffered depression; she presented no medical evidence since January 2009; and although she now is represented by counsel, she does not proffer any medical evidence that the ALJ allegedly should have considered that supports the conclusion she is disabled. The facts that Plaintiff's last medical records indicate she obtained multiple injection treatments, and that Plaintiff provided no further medical records, reasonably support the conclusion her condition was adequately controlled.

15

Cir.1986). Plaintiff provides an inadequate basis to conclude that the ALJ failed to fully and fairly develop the record. The ALJ considered the record as a whole to conclude Plaintiff was not disabled—including the medical opinion evidence and Plaintiff's work history, activities of daily living, subjective statements, and credibility. Aside from Dr. Sethi's opinions, Plaintiff does not take issue with the ALJ's assessment of the record evidence; and the evidence reasonably supports the ALJ's decision. Accordingly, Plaintiff's contention that the ALJ failed to fully and fairly develop the record is not well taken.

## VI. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

**IT IS SO ORDERED**.

s/ *Nancy A. Vecchiarelli*
U.S. Magistrate Judge

Date: August 20, 2012